FORET, Judge.
This action arises from an auto accident which took place on January 18, 1986, wherein plaintiff, Brenda Fuqua, was injured when the vehicle in which she was riding as a guest passenger was rear-ended by defendant, Kenneth Edwards. Ms. Fu-qua filed suit against Kenneth Edwards and his insurer, Gulf Insurance Company. United Services Automobile Association (United), the insurer of the vehicle in which Ms. Fuqua was riding, was also named as a defendant. United was dismissed by plaintiff prior to trial.
The only issue at trial was quantum. A unanimous jury returned a verdict in favor of Ms. Fuqua, awarding $2,145 in damages for past medical expenses and $10,000 for general damages.
By this appeal, Fuqua contends that the jury erred in awarding damages which were inadequate and inconsistent with her injuries. We do not find that the findings of the jury were clearly in error, inadequate, or inconsistent with the injuries Fu-qua received as a result of the January 18, 1986 accident and thus, we affirm.
FACTS
In January of 1985, almost one year prior to the January, 1986 accident, Fuqua was involved in a separate automobile accident. She visited Dr. Robert Po, an orthopedic surgeon, in February of 1985, at which time she stated that she had injured her left shoulder, neck, and rib area. She returned to Dr. Po in October of 1985, at which time she was diagnosed as having “chronic low back strain, with radiculitis, which indicates nerve root irritation or leg pain ...” Dr. Po again saw Fuqua in March and April of 1986, after she was involved in the second automobile accident of January, 1986. His diagnosis at this time was “neck strain, back strain from second injury, aggravation of first injury.” Dr. Po referred Fuqua to a neurologist, Dr. Arsham Naalbandian, for her reported headaches.
Dr. Naalbandian saw Fuqua in April of 1986. She indicated that her headaches were mainly in the left back portion of her head. Dr. Naalbandian tentatively diagnosed the headaches as “post-traumatic headaches mainly with posterior cervical pain”, basically muscular pain.
Fuqua then returned to Dr. Naalbandian for a follow-up examination on May 6, 1986. There was no change in her head and neck pain at this time. On May 9, 1986, Fuqua called Dr. Naalbandian’s office, relating pain and some numbness in the left temporal area, the area of the temporamandibular joint (TMJ). She went to his office on May 12, 1986, and, at that time, told Dr. Naalbandian that she had never had this symptom before. Dr. Naal-bandian noted tenderness and some abnormality in the left TMJ area and also noted that his initial examination of this area in April of 1986 had revealed it to be normal and non-tender[1]. Fuqua returned to see Dr. Naalbandian on May 19, 1986, with no change in her symptoms. She was still experiencing left TMJ pain in addition to head and neck pain. This May 19, 1986 appointment was the last time Fuqua was seen by Dr. Naalbandian as she did not keep her following appointment.
Dr. Naalbandian referred Fuqua to Dr. Robert Levy, an oral and maxillofacial surgeon, who first saw Fuqua on May 21, 1986. She had surgery on her left TM joint on June 12,1986, after attempts at conservative treatment. She remained under Dr. Levy’s care at the time of trial.
DAMAGES
Fuqua’s award for medical expenses did not include any amount to compensate *213 her for her TMJ problems. The evidence supports a reasonable juror’s finding that the TMJ problems were unrelated to the second accident in which she was involved on January 18, 1986. Both Dr. Po and Dr. Naalbandian examined Fuqua’s TM joints on April 22, 1986, over three months after the accident, and both physicians found them to be normal. Fuqua's first TMJ symptoms occurred on May 9, 1986, nearly four months after the accident.
Dr. David Carlton, an oral surgeon offered by defendants as an expert witness, testified that it was “unlikely for someone to be asymptomatic for four months and then have a problem.” He testified that, in most cases, symptoms of a TMJ type problem show some sign within a month or six weeks. These signs would be “pain in the joint area, maybe a little limitation of function. ... things typical to a sprain in any joint.” Dr. Carlton also explained that TMJ can develop in the absence of an injury, for example, from stress, muscle strain, or tooth grinding.
Based upon the fact that Fuqua had no symptoms of TMJ problems until nearly four months after the accident, together with the fact that at least two physicians examined Fuqua in April of 1986 and found no sign of TMJ syndrome, we find that the jury was not clearly in error in finding Fuqua’s TMJ symptoms unrelated to the accident of January 18, 1986. The jury’s award of general and special damages is adequate to compensate Fuqua for the wrist injury and aggravation of her neck and back injuries attributable to the second accident.
Additionally, the jury did not make an award for lost earnings or loss of earning capacity. The evidence disclosed that Fuqua was not able to work full time prior to the January, 1986 accident due to the back injury sustained in the January, 1985 accident.
Subsequently, after the January, 1986 accident, Fuqua was discharged from Central Louisiana State Hospital in Pineville, at the end of March, 1986. She went to work with Petron, Inc. in late April, in a job which was created for her with the aid of a relative. She worked full time until approximately May 9,1986, the same date her TMJ problem was revealed. After May 9, 1986, Fuqua missed approximately eight weeks of work before she returned to work in July of 1986. During this period, Fuqua underwent testing and surgery for her TMJ problem. A reasonable juror could have found that the time she lost from work in May, June, and July of 1986 was due to her TMJ problem and therefore, unrelated to the January 18, 1986 auto accident.
Finally, Fuqua contends that the jury erred in failing to award damages for aggravation of a pre-existing personality disorder. The evidence is clear that Fuqua had emotional and mental problems years prior to the accident of January, 1986. Dr. Adams, her treating clinical psychologist, testified that her personality disorder, which preceded the accident, would require long range treatment over several years. Fuqua was a mental patient at Central at the time of the January, 1986 accident and had numerous stresses in her life, other than the January, 1986 automobile accident, which contributed to her psychological problems. Her condition was diagnosed by Dr. Adams as borderline personality disorder years prior to the accident, and this diagnosis did not change after the accident. Finally, Dr. Adams’ testimony corroborated a report he wrote in July of 1986, wherein he stated that Fuqua’s condition had improved at that time. Based upon the foregoing, we cannot find that the jury was clearly wrong in denying Fuqua damages for mental pain and suffering.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against Brenda Fuqua, plaintiff-appellant.
AFFIRMED.

. Dr. Po also noted in his April, 1986 examination of Fuqua that her jaw moved well and her reflexes were normal.